UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

_____

JAMAL JOHNSON,

                              Petitioner,

        v.                                                          9:24-CV-1170
                                                                    (GTS)
E. RICKARD,

                              Respondent.

_____

APPEARANCES:                                          OF COUNSEL:

JAMAL JOHNSON
Petitioner pro se
72450-050
Ray Brook Federal Correctional Institution
P.O. Box 900
Ray Brook, New York 12977

OFFICE OF THE UNITED STATES ATTORNEY         EMER M. STACK, ESQ.
100 S. Clinton Street – Suite 9000            Asst. United States Attorney
Syracuse, New York 13261
Attorney for Respondent

GLENN T. SUDDABY
United States District Judge

**DECISION and ORDER**

**I.        INTRODUCTION**

Petitioner Jamal Johnson ("Petitioner") seeks federal habeas corpus relief pursuant to 28 U.S.C. § 2241.  Dkt. No. 1, Petition ("Pet.").  Respondent opposed the Petition.  Dkt. No. 8, Response to Petition ("Resp. Memo."); Dkt. No. 8-1, Declaration of Cheryl Magnusson ("Magnusson Decl."); Dkt. No. 8-2, Exhibits in Support of Magnusson Decl.  Petitioner then filed a reply.  Dkt. No. 11, Traverse.

For the reasons outlined below, the petition should be denied and dismissed.

1

## II.    BACKGROUND

On March 2, 2022, the United States District Court for the District of New Jersey sentenced Petitioner to a 100-month term of imprisonment, followed by three years of supervised release, for being a convicted felon in possession of a stolen firearm in violation of 18 U.S.C. § 922(g)(1).  Pet. at 1; *see U.S. v Johnson*, No. 2:19-CR-0645, Dkt. No. 73 (Mar. 2, 2022 D.N.J.).  Currently, Petitioner is a prisoner at Ray Brook Federal Correctional Institute ("Ray Brook FCI").  Pet. at 1.

On March 21, 2024, Petitioner received a First Step Act ("FSA") Recidivism Risk Assessment (PATTERN)[1], which determined that his risk level was Medium.  *See* Pet. at 31-32.  Petitioner's score included five points for a "violent offense."  *Id.*

On April 10, 2024, while confined at Ray Brook FCI, Petitioner filed a Request for Administrative Remedy claiming that his § 922(g) offense should not be considered a violent offense.  Pet. at 22.  Petitioner further noted that the categorization impacted his PATTERN score, good time credits ("GTC"), and opportunity for Residential Reentry Center ("RRC") placement.  *Id*.  The Administrative Remedy Coordinator acknowledged receipt of the request on April 19, 2024 and noted that a response was due on May 9, 2024.  *Id*. at 25.  After the Warden failed to respond, on May 15, 2024, Petitioner filed a Regional Administrative Remedy Appeal noting, "I accept the Warden's failure to respond to the grievance upon due date, May 9, 2024, as a denial thereof."  *Id.* at 23.  The Administrative Remedy Coordinator acknowledged that the appeal was received on May 20, 2024 and noted that a response was due on July 19, 2024.  Pet. at 26.

On June 3, 2024, the Warden issued a denial and explained that

---

[1] PATTERN is an acronym for "Prisoner Assessment Tool Targeting Estimated Risk and Needs."  *See* https://www.bop.gov/inmates/fsa/pattern.jsp (last visited May 14, 2026).

> 18:922(G)(1) Possession of a Firearm by a Convicted Felon is one of the offenses included on the Violent Offense Codes for PATTERN Assessment. Therefore, PATTERN is programmed to automatically score this offense as violent.  This process is managed by an outside entity apart of the Bureau of Prisons.

Pet. at 15.

In the Regional Director's response, dated July 11, 2024, she explained that

> Under the First Step Act of 2018 (FSA), PATTERN is an assessment tool designed to predict the likelihood of general and violent recidivism for all BOP inmates over a  three-year follow-up period.  PATTERN contains static factors, such as age and crime of conviction, as well as dynamic factors, such as program participation or lack of participation.  These factors are associated with either an increase or a reduction in risk of recidivism. Upon the initial assessment, staff will assign each inmate an initial recidivism risk level of Minimum, Low, Medium, or High.  The BOP reassesses the needs and risk of all inmates on an ongoing basis, ordinarily in conjunction with their regularly scheduled Program Review.
>
> Your appeal has been reviewed.  The record reveals you are serving a sentence for Possession of a Firearm by a Convicted Felon, 18 USC § 922(g).  As such, you instant offense is classified as a violent offence.  This matter has been reviewed.  Your PATTERN assessment is correct.  Accordingly, your appeal is denied.

Pet. at 16.  The response was marked "received" in the Ray Brook FCI Mail Room on July 29, 2024.  *Id.*

On July 25, 2024, Petitioner filed an appeal to the Central Office noting, "I accept the Northeast Regional Office Admin. Rem. Coordinator's failure to respond within the allotted extension of time dated July 19, 2024, to my grievance [. . . ] as a denial thereof."  Pet. at 18. Petitioner's appeal was received by the BOP on August 1, 2024.  *Id*.  Petitioner's appeal to the Central Office was rejected on August 5, 2024, for failing to include a copy of the Institutional Request and Response and Regional Office Appeal and Response.  *Id*. at 17. Petitioner was advised that he "may resubmit [his] appeal in the proper form within 15 days of

3

the date of this rejection notice." *Id.* The notice was marked "received" by the Ray Brook FCI Mail Room on August 29, 2024. Pet. at 17. Petitioner did not resubmit his appeal. Dkt. No. 8-1 at ¶ 12.

## III.    PETITION

Petitioner seeks federal habeas corpus relief due to the Federal Bureau of Prison ("BOP") unlawfully classifying his criminal conviction as a crime of violence, resulting in an adverse security classification and miscalculations related to his rate of recidivism, accrual of federal time credits ("FTC") and opportunity for RRC placement. *See generally* Pet. Petitioner seeks an order "hold[ing] as a matter of [ ] law it is unlawful for the BOP to classify" Petitioner's current offense as a "violent offense." *Id.* at 8. Respondent contends the petition is procedurally barred due to plaintiff's failure to exhaust administrative remedies. Resp. Memo at 9. In support of this assertion, Respondent supplied the Court with the Declaration of BOP Legal Assistant Cheryl Magnusson, in which she has provided detailed testimony concerning her search of the BOP's records regarding grievances filed by Petitioner. *See* Dkt. No. 8-1. Respondent further argues that the petition lacks merit because petitioner has no liberty interest in his custody classification. Resp. Memo. at 12-15.

## IV.    DISCUSSION

A federal prisoner may challenge his detention under 28 U.S.C. §§ 2241 and 2255. *See* 28 U.S.C. § 2255; *Adams v. United States*, 372 F.3d 132, 134 (2d Cir. 2004); *Chambers v. United States*, 106 F.3d 472, 474 (2d Cir. 1997). Section 2241 is the proper vehicle to challenge the execution of a sentence. *Adams*, 372 F.3d at 135; 28 U.S.C. § 2241. For example, a petitioner may use a section 2241 petition to challenge a federal official's

4

computation of a sentence, parole decisions, or prison disciplinary actions. *Cook v. N.Y.S. iv. of Parole*, 321 F.3d 274, 278 (2d Cir. 2003); *Jiminian v. Nash*, 245 F.3d 144, 146 (2d Cir. 2001). Petitions filed under section 2241 must name the petitioner's warden as respondent and be filed in the district of the petitioner's confinement. 28 U.S.C. § 2241(a); *Rumsfeld v. Padilla*, 542 U.S. 426, 435, 447 (2004).

Here, Petitioner is a federal inmate, confined at Ray Brook FCI, seeking to challenge the execution of his sentence. Therefore, the habeas petition is brought properly through section 2241.

## A. Exhaustion of Remedies

A petitioner seeking relief pursuant to § 2241 must exhaust his or her administrative remedies. *Carmona v. U.S. Bureau of Prisons*, 243 F.3d 629, 630 (2d Cir. 2001); *accord Lallave v. Martinez*, 609 F.Supp.3d 164, 179 (E.D.N.Y. 2022). "This requires compliance with the BOP's four-step Administrative Remedy Program." *Lallave*, 609 F.Supp.3d at 179 (citing 28 C.F.R. § 542.10(a)).

This Court has previously outlined how exhaustion must occur:

> Available to all federal prison inmates is an internal, four-step administrative grievance procedure adopted by the BOP for the stated purpose of "allow[ing]  an inmate to seek formal review of an issue relating to any aspect of his/her own confinement." ... The first step of the prescribed process entails making an effort to obtain an early resolution of the matter by raising the issue informally to staff.... In the event this avenue does not lead to a successful resolution, the inmate next may submit a formal written [Administrative Remedy ("AR")] to the warden of the particular facility involved, utilizing a designated BP–9 form, within twenty days of the relevant event.... If the AR is denied, an appeal may be taken to the appropriate BOP Regional Director within twenty calendar days of the date of denial.... As a fourth and final step, an unfavorable decision from the Regional Director may be appealed to the General Counsel's office (also referred to as the "Central

Office" [or "CORC"]) within thirty days of the date on which the Regional Director rejects the inmate's appeal.

*Barber v. Perdue*, No. 9:11-CV-0127 (NAM/DEP), 2012 WL 5996342, at *4 (N.D.N.Y. Nov. 9, 2012) (citing cases and 28 C.F.R. §§ 542.10(a), 542.13(a), 542.14(a), & 542.15(a)) (internal citations omitted).  "Until the BOP's Central Office considers the appeal, no administrative remedy is considered to be fully exhausted."  *Strong v. Lappin*, No. 1:09-CV-3522, 2010 WL 276206, at *4 (E.D.N.Y. Jan. 15, 2010); *accord, Barber*, 2012 WL 5996342, at *4.  "Courts have required an inmate to proceed with the next step in the grievance procedure, even in the absence of a BOP official's response to the prior step, in order to properly exhaust the available administrative remedies."  *Thai v. Pullen*, No. 3:22-CV-605, 2022 WL 17355189, at *5 (D. Conn. Dec. 1, 2022) (citations omitted).

"In order to file an appeal to the Central Office, the prisoner is required to submit appeals to the Regional Director and Central Office on specific forms, and to attach a complete copy of the request and response from the previous levels."  *Flete-Garcia v. Nash*, No. 3:23-CV-195, 2023 WL 8358066, at *2 (D. Conn. Dec. 1, 2023) (citing 28 C.F.R. § 542.15(b)(1)); *Stokes v. Warden of FCI-Allenwood Low*, No. 1:24-CV-571, 2024 WL 4567283, at *3 (M.D. Pa. Oct. 24, 2024) (§ 542.15(b)(1) requires the petitioner to "include one complete copy or duplicate original of the institution and regional filings and their responses" with the Appeals to the General Counsel), *appeal dismissed as moot sub nom. Stokes v. Warden Allenwood FCI Low*, No. 24-3079, 2025 WL 3191903 (3d Cir. July 11, 2025).  If the inmate does not comply with this requirement, their appeal may be rejected and returned to them.  *See* 28 C.F.R. § 542.17(a).

Here, Petitioner asserts that he provided photocopies of his "BP(9) and BP(10)" with his appeal to the Central Office but explains that he did not include photocopies of the

6

Warden's reply or the Regional Office's reply because he "did not receive them until after he had filed [his] BP-11 Central Office Administrative Appeal.[2]  Pet. at 11-12.  Respondent presents a slightly different account and asserts that Petitioner failed to include copies of his request to the Warden, his appeal to the Regional Director, **and** the responses thereto.  *See* Resp. Memo. at 11.  While the Court acknowledges this discrepancy and even assuming Petitioner's account of the facts, the Court finds that Petitioner failed to exhaust his administrative remedies.

The record before the Court clearly demonstrates that Petitioner continued to pursue his administrative remedies despite the Warden's delay in responding to his request and the delay in receiving the Regional Director's response from the mail room.  *See Thai*, 2022 WL 17355189, at *5 ("In other words, the fact that he did not timely receive the Regional Director's response to his third-level appeal did not prevent Petitioner from filing a fourth-level appeal to the General Counsel.").  The record also establishes that, on August 5, 2024, the Central Office rejected Petitioner's appeal for failure to provide copies of documents from previous levels and provided him with an opportunity to resubmit his appeal in proper form. *See* Pet. at 17.  However, Petitioner concedes that he failed to do so and provides no explanation as to why.  Moreover, even assuming that the aforementioned delays "somehow prevented" Petitioner from attaching the necessary documents to his Central Office appeal, he could have requested an extension of time, which he did not do.  *See Stokes*, 2024 WL 4567283, at *3.  Accordingly, Petitioner failed to properly exhaust his administrative

---

[2]  The record however, does not support Petitioner's claim.  Petitioner received the Warden's response on June 3, 2025, *see* Pet. at 15, yet he filed his Central Office Appeal on July 25, 2025.  *See id*. at 18.  Therefore, Petitioner could have included the Warden's response with his Central Office Appeal.

remedies.  *See Flete-Garcia*, 2023 WL 8358066, at *2; *see also Fan v. Williams,* No. 3:17-CV-630, 2017 WL 1652647, at *2 (D. Conn. Apr. 28, 2017).

In an attempt to explain his failure to exhaust, Petitioner asserts that his counselor, "obstructed [his] possession of the administrative remedies receipts" and noted that he received the responses, "much after the date the BP(9) and (10) replies had been dated." Pet. at 12.

"The Second Circuit has held that a petitioner may pursue a request for habeas corpus relief, including pursuant to 28 U.S.C. § 2241, even where he has failed to exhaust administrative remedies prior to filing the action in district court, only upon a showing of cause and prejudice."  *Barber*, 2012 WL 5996342, at *5 (citing *Carmona*, 243 F.3d at 634) ("[T]he interests of judicial economy and accuracy are served by requiring that, absent a showing of cause and prejudice, appeals proceed in the first instance through the agency review process.").  "To establish legal 'cause' in this context, [petitioner] must demonstrate that 'something external to the petitioner, something that cannot be fairly attributed to him' prevented him from fully exhausting his administrative remedies."  *Spring v. Schult*, No. 908-CV-0531 (LEK), 2009 WL 3232183, at *2 (N.D.N.Y. Oct. 1, 2009) (citations and internal quotation marks omitted).  "Objective factors constituting cause in this context includes interference by officials which made compliance with the relevant procedural rules impractical."  *Id.*

Here, although Petitioner provided the name of his counselor, the petition lacks any other information related to the counselor's alleged "obstruction" including why or when she obstructed Petitioner's mail.  Petitioner's "generalities and conclusory assertions" related to difficulties he experienced with his mail do not excuse him from exhausting his administrative

8

remedies.  *See Strouse v. Wilson*, No. 3:12-CV-653, 2014 WL 843276, at *5 (E.D. Va. Mar. 4, 2014) (rejecting the petitioner's suggestion that he was excused him from complying with the exhaustion requirement "because the prison mailroom conspired to cause action of delay or dismissal of plaintiff's administrative remedies" as insufficient), *aff'd,* 575 Fed. App'x 115 (4th Cir. 2014).

Therefore, Petitioner has failed to establish cause to excuse his failure to exhaust his administrative remedies.  Accordingly, the Court need not decide whether he suffered prejudice.  *See Stepney v. Lopez*, 760 F.2d 40, 45 (2d Cir. 1985).

## B. Merits

Even assuming Petitioner could overcome the procedural bar his failure to exhaust imposes, his claim fails on the merits.  Petitioner claims that the BOP's classification of § 922(g) as a violent crime "unfairly restrict[s] nonviolent offenders' access to FSA benefits, infringing on [ ] due process protections."  Dkt. No. 11 at 3.  Petitioner also contends that the classification is "keeping him incarcerated longer than lawful."  *Id*. at 4.

The FSA "modified prior sentencing law and expanded vocational training, early-release programs, and other programing designed to reduce recidivism." *United States v. Simons*, No. 1:07-CR-0874, 2019 WL 1760840, at *4 (E.D.N.Y. Apr. 22, 2019).  The FSA required that the Attorney General create a "risk and needs assessment system," to "determine the recidivism risk of each prisoner . . . and classify each prisoner as having minimum, low, medium, or high risk for recidivism[.]"  *See* 18 U.S.C. § 3632(a).  In response, the BOP created PATTERN, which assesses an incarcerated person's recidivism risk by examining fifteen risk factors and assigning each factor a certain point value.  *Rosenberg v. Pliler*, No. 21-CV-5321, 2021 WL 6014938, at *1 (S.D.N.Y. Dec. 20, 2021); *Hueston v.*

*Rickard*, No. 1:25-CV-05600, 2026 WL 880509, at *1 (S.D.N.Y. Mar. 31, 2026). "Scores are assigned based on an inmate's age, criminal history, history of escapes, history of violence, education level, need for drug rehabilitation, prison incidents, and programs completed in prison." *Gallicchio v. Pliler*, No. 22-CV-06643, 2025 WL 4679000, at *2 (S.D.N.Y. May 12, 2025) (citation omitted), *report and recommendation adopted sub nom.* 2026 WL 976544 (S.D.N.Y. Apr. 9, 2026). Based on the total score, an inmate receives a high, medium, low, or minimum risk designation. *Id.*

"One of the criteria that the BOP considers in calculating a PATTERN score is whether the inmate committed a 'violent offense.' " *Stewart v. Warden, FCI Danbury*, No. 24-CV-1553, 2025 WL 3180503, at *2 (D. Conn. Nov. 14, 2025). "The BOP has developed a list of offenses that it considers violent, and convictions under Section 922(g), [. . .] appear[] on that list". *Id.; see also* Violent Offense Codes for PATTERN Risk Assessment, www.bop.gov/inmates/fsa/docs/fsa_pattern_violent_offense_codes.pdf (last visited May 14, 2026).

While the Second Circuit has not "addressed the question of whether the BOP may classify a conviction as a 'crime of violence' for PATTERN scoring purposes," "numerous other courts have concluded that the parameters used to determine a PATTERN risk assessment score fall entirely within the BOP's discretion and are not subject to judicial review." *Stewart,* 2025 WL 3180503, at *2 (noting that the FSA "expressly delegates to the Attorney General—and, by extension, to the BOP—the authority to develop and implement a risk and needs assessment system to determine and classify each prisoner's recidivism risk") (citations omitted); *see also White v. Birkholtz*, No. 3:25-CV-00606, 2025 WL 3496684, at *2 (D. Or. Dec. 5, 2025) (denying petition because "the BOP retains broad discretion to

determine which [inmates] meet the PATTERN eligibility standards for minimum and low risk designations, including defining what constitutes a violent offense").

In *Stewart*, the District Court reasoned

> . . . the BOP has discretion to determine how to calculate PATTERN scores and to decide which crimes are categorized as "violent offenses" for that limited purpose.  The Court's role does not extend to second-guessing or revising those determinations. To do so would impermissibly intrude upon the agency's delegated authority. The Court finds particularly persuasive the long line of cases, from many district courts across the country, denying habeas relief based on similar grounds.  *See Harris*, 2025 WL 769606, at *7 (finding that habeas petitioner's claim that the BOP was mischaracterizing his § 922 (g) conviction as a "crime of violence" was not subject to judicial review), *R&R adopted*, 2025 WL 757827 (S.D.W. Va. Mar. 10, 2025); *Sampson v. Lillard*, No. 23-CV-1792, 2024 WL 4040350 (S.D. Ill. Sept. 4, 2024) (distinguishing the definitions of "crime of violence" for the purposes of sentencing and for PATTERN scoring pursuant to the First Step Act, and concluding that the BOP's determination that an offense under 18 U.S.C. § 922(g) was a "crime of violence" for PATTERN scoring was within its discretion).  This case is no different.
>
> Accordingly, because the parameters used to determine an inmate's PATTERN risk assessment score are committed to the BOP's discretion, and because Stewart's petition identifies no other violation of federal law or the Constitution, his claim fails as a matter of law.

*Stewart*, 2025 WL 3180503, at * 3.

This Court adopts the reasoning of the *Stewart* court and finds that Petitioner's claim that the BOP's decision to treat his conviction as a "crime of violence" in calculating his PATTERN score is unlawful is not reviewable.  Accordingly, the petition is denied on the merits.[3]

**V.    CONCLUSION**

---

[3] To the extent that Petitioner's Traverse could be construed to include a motion for reconsideration of the decision to deny Petitioner's motion for counsel, *see* Dkt. No. 11 at 5, that request is denied.

**WHEREFORE**, it is

**ORDERED** that the petition, Dkt. No. 1, is **DISMISSED AND DENIED**; and it is further

**ORDERED** that because the petition was brought under 28 U.S.C. § 2241, a certificate of appealability is not required for petitioner to appeal the denial of his petition. *See Murphy v. United States*, 199 F.3d 599, 601 n.2 (2d Cir. 1999) (holding that the Antiterrorism and Effective Death Penalty Act's certificate of appealability requirement does not apply to § 2241 petitions). However, to the extent one is required, the Court recommends that no certificate of appealability be issued because reasonable jurists would not find it debatable that petitioner has failed to demonstrate by a substantial showing that he was denied a constitutional right. *See* 28 U.S.C. § 2253(c); *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000); and it is further

**ORDERED** that the Clerk serve a copy of this Decision and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED**.

Date:  May 27, 2026

      Syracuse, NY

Glenn T. Suddaby
U.S. District Judge